{¶ 47} I respectfully dissent from the majority's analysis and disposition of appellant's sole assignment of error.
 {¶ 48} At issue in the case sub judice is whether appellant has established his claim for retaliatory discharge.
 {¶ 49} As an initial matter, I would note that appellee, in its brief, contends that it was unaware that appellant had filed a claim for additional workers' compensation benefits and, therefore, could not have retaliated against him for doing so. However, appellant, in his deposition, testified, in relevant part, as follows:
 {¶ 50} "Q. In terms of — well, let me ask you. You were discharged on June 27, 2004?
 {¶ 51} "A. Yes.
 {¶ 52} "Q. How long was that after you first sought legal counsel?
 {¶ 53} "A. For this case?
 {¶ 54} "Q. Yes.
 {¶ 55} "A. Would be, I would say, at least two weeks before I was let go that I had got legal counsel.[1]
 {¶ 56} "Q. Okay. You were let go on June 7th; is that right?
 {¶ 57} "A. Yes.
 {¶ 58} "Q. And your testimony is about two weeks before you were let go you —
 {¶ 59} "A. I sought legal counsel for my eye.
 {¶ 60} "Q. Okay.
 {¶ 61} "A. For representation for my eye.
 {¶ 62} "Q. In your Workers' Comp claim?
 {¶ 63} "A. Yes.
 {¶ 64} "Q. Okay. Now, how do you know that the company knew you sought legal counsel?
 {¶ 65} "A. Everybody in the office started asking me.
 {¶ 66} "Q. What did they say?
 {¶ 67} "A. Ray Underwood was asking me if I sought legal counsel, Larry Northup [a dispatch supervisor] asked me if I sought legal counsel in regards to my eye, what kind of settlement am I looking at." Deposition of Mark Marino at 7 — 9. Thus, I would find that there is evidence that at least one of the people who appellee admits participated in the decision to transfer appellant to asphalt, namely, Roy Underwood, knew that appellant had sought legal counsel in order to obtain additional benefits for injury to his eye.
 {¶ 68} I concur with the majority's determination that appellant met his initial burden and established a prima facie case for retaliatory discharge. I further concur with the majority that appellee responded with evidence of a legitimate, non-retaliatory reason for discharging appellant. Appellee has provided evidence that appellant was unable to perform the functions of either a fuel or asphalt dispatcher effectively and made costly mistakes that led appellee to fear it would lose important customers. Appellee, having set forth a legitimate, non-retaliatory reason, the burden once again shifts to appellant to establish that the reason articulated by appellee is pretextual and that the real reason for appellant's discharge was his protected activity under the Ohio Workers' Compensation Act.
 {¶ 69} However, I disagree with the majority's conclusion that appellant failed to rebut appellee's evidence that it had a non-retaliatory reason for discharging appellant. In the case sub judice, appellant was performing the functions of a fuel dispatcher at the time he filed his motion for additional benefits. While appellee contends that appellant was unable to perform the functions of the job of fuel dispatcher, there is no written documentation of appellant's poor performance. Shortly after appellant filed his motion, he was transferred to asphalt dispatching, an area he was unfamiliar with and admittedly had problems performing. I would agree with appellant that, in viewing the evidence in a light most favorable to appellant, "this Court must analyze this case from the prospective that [appellant] had no performance difficulties prior to filing the loss of vision claim but, rather, had received praise for his performance . . . and that criticisms that ultimately led to his termination did not surface until after he had filed the loss of vision claims."
 {¶ 70} Based on the foregoing, I would find that there are genuine issues of material fact in dispute as to whether appellant was discharged in retaliation for filing a workers' compensation claim. I would further find, therefore, that the trial court erred in granting appellant's Motion for Summary Judgment on appellant's statutory claim and on appellant's claim that appellee violated Ohio public policy by firing appellant for filing a workers' compensation claim.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Appellant's new counsel actually filed a motion seeking additional benefits for loss of vision on April 23, 2004.